Good morning. Brian Hentos on behalf of PG Publishing doing business as the Pittsburgh Post-Gazette. I'd like to reserve five minutes if that's possible. That is possible and as you're probably aware we're not watching the clock all that closely. So I have noticed that your honor. Go ahead. So we have two issues here today. First did the National Labor Relations Board err in finding a statutory right to maintain a five-shift guarantee based solely on an expired CBA that explicitly limited the provision to the balance of the agreement ending on a date certain. Second issue, considering the company's rights under First National Maintenance, did the board err in ordering reinstatement of two paper handlers that were laid off after the company engaged in effects bargaining over its transition to an all-digital newspaper? Right. Now can I can I sort of reframe the first issue as as I think as I understand it from your papers and the other sides of back and forth in the briefing. I understand you to be asking whether the board erred in not determining what uh the Pittsburgh Gazette's status quo obligations were using ordinary contract principles. That's correct. Is that it? Yes that is correct your honor. Okay then then help me um understand how this uh how this works uh the the status quo. Um here's I'm going to be asking this to the other side too but I want to you know I uh don't claim to be a labor lawyer but here's what I understand. There's a there's a collective bargaining agreement and under this CBA even if it expires once you're into negotiations for a new CBA the the the status quo ante before that is before expiration carries those provisions forward. You have to live by them uh because the law the NLRA itself says you must do that and I understand their argument to be that includes the obligation to give this five uh shift opportunity to the employees including the two pressmen who were laid off. In a nutshell I understand your argument to be that's just not so because section 10.2 in the document said that that five shift opportunity ended by the terms of 10.2 on a date certain a date which happened to coincide with the ending of the CBA itself. Have I stated your position correctly? You did with one small caveat judge. Our position would be it's not what the terms and conditions were during the agreement it was the terms and conditions at the time of termination and here based on let's call it a sunset provision on the five shift guarantee we state yes it's in play for the balance of the agreement ending on date certain which happens to be the date that the contract terminates. How is your position really different than than looking at this as uh a status quo uh sort of prima facie case and then analyzing it as a matter of waiver? Because our position is you never have to get to the issue of waiver your honor the status quo was that the guarantee it expired along with the agreement. If you look at packet you look at Reese they say look look at contract principles our position is there's only one way you can read that provision and that is the guarantee ends at with the contract therefore it never becomes part of the status quo. As a practical matter what what's the difference is it burden of proof is it the standard? I think you never have to if you look at the Finley hospital from the sister court what they said is look we're not going to get to the waiver issue because it never became part of the status quo to So yes I think it has a little bit to do with the burden of proof but I don't think you ever need to get to the unmistakable waiver issue you just have to say well what was the status quo what was the understanding of the parties when the term when the contract terminated here any played reading of the language leaves you with only one conclusion it expires. It does matter because of the burden proof right because you're saying the upside of your argument I take it the reason you're making the argument is under ordinary contract principles you just have to demonstrate yet it ended then therefore not the status quo but if it were a waiver you'd have to have more clear more strong more explicit language to make your case right? Actually your honor I think irrespective of which way you look at it I think you get to the same result. So you think you think that this language even if we thought oh it's not it is part of the status quo it didn't it didn't end by its terms and therefore it did continue forward the language of 10.2 was sufficient in itself even under a correct reading of the NLRA and a statutory obligation to have waived that. Yes I would take that position for one reason so if you look at the Finley hospital case there they said that they just had the balance of the agreement type of language in it here we had that and we go one step further and say in stating ending on the contract expiration date so I think any way you look at it if you're looking at it other under the status quo which is our position that it should be analyzed under the status quo or if you look at it a waiver we've done enough. Well you say it's on all fours with Finley hospital but Finley hospital in the course reasoning talks about there being no legal precedent quote supporting the notion that a one-time act by an employer creates a new status quo right and and and it also points out that it uses the the duration of the agreement language no less than three times so how is that how is what we have on here really on par in terms of how clear and unmistakable it is? It's so your in Finley hospital they said yeah it was a one-time wage increases a one-year contract here we have one contract to look at your honor yes it was a three-year contract but it was still just one contract so I think it is analogous on that point now if you look at our contract it lists the duration of the agreement language three places general duration the general duration clause in 10.2 and then in the in the no strike provision obviously the no strike provision it's operation of law once the contract ends there can't be any no strike language here so it leaves you with one issue really what did the drafters of the contract mean why would they have put this in 10.2 if not to make crystal clear this does not survive so that that's your superfluidity argument I'm sorry that's the superfluidity argument yes I would say so because look if if you look at the contract as a whole there has to be a reason that the drafters went to 10.2 specifically and said look here we're going to treat this different we want to make clear to any reader that this expires along with the contract and it was treated differently how and it was treated differently how because it is only listed in those three places in the contract one being general duration and the other in the no strike provision you've got a couple minutes left here uh in your opening why don't you talk to us for a moment about your second position and again I'll ask you to help me make sure I understand this correctly the the idea of bargaining to impasse versus bargaining over effects of an entrepreneurial decision um I take it that the fight here is that that there is a definite difference between those two things the the position that you've got is once we're in that once we're in the land of an entrepreneurial decision like we're going digital there's no obligation to bargain with respect to overall cba the only obligation is to bargain with respect to what's the fallout from from the decision to stop publishing a paper edition uh seven days a week is that right yes your honor so under first national maintenance it lays out here's what you do when you make an entrepreneurial decision you engage in effects bargaining what the board does here is they say well we're going to ignore first national maintenance in its entirety and instead insist upon our bottom line overall impasse overall impasse analysis overall impasse is a shorthand for saying overall impasse as to a full cba correct your honor and our position which the alj rightfully saw and the dissent rightfully saw first national maintenance just doesn't fit into bottom line in fact the board knows that if you go back and the alj what he said is look it's incompatible and really what the board does in a first national maintenance issue it applies transmarine this is what they've done in the past continuously this is how the board handled first national maintenance for some reason this administrative administration has taken it in a different direction so the the practical impact of the board's decision in your view would have been to force pg to renegotiate the entire cba as opposed to resolving through effects bargaining what judge jordan has quite rightly referred to as the fallout correct their position is you could not have laid off those two paper handlers irrespective of you making the first national that opens up everything yep that's exactly it and in that way your honor it completely undermines completely throws out first national maintenance and interestingly if you look at the majority opinion they bury it but in footnote 18 they say well it's undisputed that this is a poor entrepreneurial decision but look it's not an effects bargaining case so we're just going to ignore it well do we do we end up getting to your second issue because of because of that footnote didn't they pin their entire decision on the status quo your honor respectfully i would say they completely ignored first national maintenance but nobody else did but my question to you is what did they do you can say they ignored it it was wrong they were bad etc etc but it's a matter of review we're reviewing a decision which turns solely on their uh statement that you you made a unilateral decision in violation of the status quo right yes i our position would also be that they ignored the first national maintenance issue and they had no right to do that once they made the determination that a core entrepreneurial decision applied then the first national framework applies does that mean we we would need to remand for them to address this additional issue that you're that you're focused on no your honor i think it's crystal clear if you look at it and you say hey first national maintenance was triggered here how is it crystal clear if what they say is we're not talking about that we don't have to talk about they didn't address it right they chose not to they chose not to but here is their fatal flaw they acknowledged and admitted that this was a core entrepreneurial decision at that point they have no discretion they must apply the supreme court law well no at that point they they did make a decision and and one could argue they absolutely had a right to make a decision you know they may have erred on the on the first issue but having decided the first issue they decided they didn't have to look at the second issue that that's how it reads that's how it they made a decision on the first issue and said we're not deciding the second issue we don't have to well the problem there your honor is even if the board would have said look we think statutorily you have to do this first national maintenance is still a complete defense for us because the rights under first national maintenance they trump the rights under bottom line the board decision so even if even if today you were to say you know what i think that five shift guarantee survived even if it did we still had every right under first national maintenance to engage in effects bargaining and and make the decision your legal position is even if it was status quo that uh first national kicks in and that's it's like first national uber alice does doesn't make any difference all those other cases that talk about you can't unilaterally change things are are by the boards you could make you could rule in our favor either way here your honor but both parties have struggled to to produce to us any any authority that's dealing with this precise circumstance right where the the unilateral change that is driven by an entrepreneurial decision comes at a time when a cba is being negotiated no party could could point to a direct issue that compared first national maintenance and its compatibility with bottom line that's exactly what the alj looked at he said look i looked everywhere i can't find anything but from common sense he was able to say look it's just they're not compatible because and if you look at it look with the remedy that the board ordered we engaged in the effects bargaining no dispute about that we did exactly what we were told to do under supreme court law but the board's saying yeah you're going to reinstate these two guys even though you've already made your transition to the all digital analysis that's what transmarine kind of looked at in the past and said well wait you know if they engage in effects bargaining they made that core entrepreneurial decision then we can't order reinstatement that that just points up that this is right at the intersection of those two lines of cases and it implicates all sorts of nuanced policy issues there's not authority that says that the board must under those circumstances treat it solely as a an effects bargaining requirement nor is there on the other so i think going back to judge jordan's question it is this something that the if if if that uh issue of how to resolve the tension in those lines of cases and those policies was not addressed at all by the board then under jennery don't we need to remand um you're saying no we can we can do that without the board uh taking on an analysis of its own and is it even prudent for us to do that given the policy concerns i think your honor the issue here is that first national maintenance that's supreme court precedent the bottom line is it's a board case no matter what that needs to yield the first national maintenance if the company makes the first national maintenance decision that controls we never get there if we agree with you on your first issue you don't all right well is that so i mean because uh there were two different grounds that that that at the different levels here right um one is looking at it as uh layoffs just the termination as the unilateral action right and the other is the guarantee as two separate actions that's the way the board analyzed it right yes your honor but if there was no guarantee then the layoffs wouldn't have been unlawful because there would have been no requirement for the five-shift guarantee the five-shift guarantee would not have been the status quo that's well even without a five-shift guarantee um there are other provisions that could have been made and in fact as i understand it were part of the negotiations the effects bargaining negotiations that were going on about other tasks that could be taken on by those employees to remain employed right yes that was the effects bargaining your honor where there was talks as to layoffs there were talks as to continuation of health care and there's no there's no allegation that any of that was done in bad faith so it's resolution of the of the five-shift guarantee doesn't take off the table layoffs being its own unilateral change to terms and conditions of employment right yes there's still no matter what your honor after the contract expired let's say the five-shift guarantee and this is kind of i'll call this the bogeyman argument that we saw in some of the the unions case they say oh well if there's no five-shift guarantee then the company can unilaterally do whatever it wants that's not what we're saying um you're 100 correct the contract did contain other provisions that talked about hours worked so our position would be yes after the contract expired then there even though the five-shift guarantee went away that didn't give us unilateral right to do whatever we want there were still we would still have to bargain over things like hours of work so and that was the basis for the board's decision right the board focused on the unilateral action of the layoffs not of the uh the five-shift guarantee so the the general counsel's complaint was narrowly tailored and it simply said look you were prohibited from doing this until you reached an overall impasse on everything they didn't allege that anything with respect to the individual layoffs that occurred as a result of the first national maintenance decision was unlawful so it's really that's kind of not before us i would say your honor we have before us the board's decision and the board is explicit that in its view the alj erred by limiting its review seeing a single uh resolution around the five-shift guarantee the the uh the board says no there are two different actions at play here one was the only layoffs yes because they i believe what the the board looked at was they said look the five-shift guarantee survived therefore you were prohibited from making the layoffs at all under bottom line that's the allegation that's how i'm sorry go ahead well no no this is this is important because it bears on what what we would have to do it sounds like you're agreeing with judge krauss that independent of resolution in your favor on issue one you were bound by other things that would be status quo that would have prevented you from laying people off but for the entrepreneurial decision is that are you agreeing with that's not what the general counsel alleged they're alleging don't tell me what the general counsel just answer the question that i'm trying to put to you which is you appear to be acknowledging that even if the if the court excuse me the nlrb what what had been wrong about issue one and the five-shift guarantee wasn't status quo it could still be viewed as unilateral action contrary to your status quo obligations to lay these two people off because there were other protections in the cba that continued is that correct yeah so let me i think you kind of you've turned me in the right direction i understand where this is going now so here's how it would go first our position is the the guarantee never becomes part of the status quo it doesn't national maintenance decision that gives us the right so we do have to get to the second yes you do your honor okay uh all right sorry for the confusion on that do we even and do we get to the first issue given the um the board's analysis which is what we're really reviewing i'm sorry your honor well isn't the board focused on the the action of layoffs not the action of the five guarantee your honor they're saying look you never the five-shift guarantee survived therefore you needed to guarantee that five shifts it identifies there being two theories of liability and it resolves it on the layoff basis right but it's based upon the board's finding that we had a statutory obligation to maintain the five-shift guarantee if if we're in agreement that uh we would need to reach the what we're calling the second issue that is how to resolve the intersection of the negotiations of a collective bargaining agreement which in the normal course would require the overall bargaining uh and that was not addressed by the board itself in its opinion let me come back to the question in progress i i asked you earlier um which is if it didn't address it at all is that something we can address and if so how i i believe you can your honor by simply looking at the remedy i'm sorry the requirements of bottom line and the requirements of first national maintenance and if something in bottom line if if bottom line is not compatible with first national maintenance such that you could not utilize your rights under first national maintenance i don't i think this board is in perfect position to address that issue well i'm asking a slightly different question i understand that's that's the argument on the merits i'm asking about chenary um and can we uh that's not a ground that was addressed by the board at all don't we need to remand for the board to address it in the first instance i think they did address it your honor by them stating look we acknowledge that this is an entrepreneurial decision and then just choosing to ignore it i think that was there they had every opportunity to address it they purposely chose to ignore it because it was not compatible with the outcome they saw it anything okay thank you very much mr mentos we'll hear from council for the nlrb good morning may i please the court joel heller for the national labor relations board and this case hinges on the difference between a party's contractual obligations and a party's obligations now the court seems to be aware of the of what happens in linton but just to make sure we're all on the same page before we delve into the into the language in this case but the supreme court explained in linton that existing terms and conditions of employment that are then in effect when a contract when a collective bargaining agreement expires carry over remain in it in effect by operation of law we're we know your argument good now go directly please to the argument from the post gazette that 10.2 is clear and it's clear that it's not speaking about it says it doesn't put that date in there you know by accident it's not talking about the termination of the agreement as a whole 10.2 is talking about the termination of the five shift guarantee and and that is a clear bargain for accepted end of the line on five shift guarantee that everybody agreed to and therefore linton doesn't come into it at all tackett and reese come into it and tackett and reese dictate that under ordinary contract principles that's not part of the status because everybody agreed it wasn't they all agreed that it ended done what is wrong with that argument i'll take the first part first and then i'll get to tack and reese the first part is that the the language in 10.2 refers to the duration the endpoint of the contract not that's that's the point that's the entire argument well we disagree on that you just put your finger on the argument which is how do you interpret 10.2 are you the nlrb entitled to say no that's what it means or is that a matter of like is that let me change that the nlrb is certainly entitled to try to figure out what the contract means but at the point you're trying to figure out what the contract means aren't you bound by ordinary contract interpretive principles we are bound yes as a matter of contract interpretation you can't get away from tackett and reese because that's what tackett and reese say so as a general matter 30,000 feet we have no dispute with that that general that ordinary contract principles apply to contract interpretation of cbas what we disagree with is this specific contract principle that the post gazette puts forward here that con that employment terms end with the contract absent express language to the contrary and that principle is inconsistent with lytton wait you're what you're saying is they couldn't have agreed assume assume for the sake of argument that uh instead of saying march 31 2017 they'd said march 30 2017 they picked or or april 1st 27 they picked any date other than the coincident date of the end of the agreement would your argument be the same i think it was a different date than the end date of the contract and no i because you can't say that that phrase refers to the end date of the contract because it doesn't down to is the nlrb's assertion not some grand legal principle under the nlra or under lytton but the nlrb's interpretation that by picking march 31 2017 they really meant not the a separate end date for this 10.2 they really meant oh we're just referring to the end date of the agreement and therefore it's part of the status quo that's your argument right yes first the end of the contract because you have to read this case in light of the other cases dealing with the original language nothing to do with this has nothing to do with cases we're not talking about case law at this point we're talking about what does this language mean yes right we're talking about what this language means but in the context of this idea from lytton well uh how does that have anything to do with this once you agree mr heller that that we're we're in the land of contract interpretation don't you have to agree that tackett and reese tell us ordinary contract principles but what ordinary contract principles are we talking about the agreement itself let's look at the agreement itself what what should we make of the fact that 10.2 is the only provision to specify an end date well that's not true there are other provisions that in the contract that have the same end date please ja247 for example is an agreement about safety shoes i believe and it says this agreement will remain remain in operation through the end of this collective bargaining agreement through the end of the collective bargaining agreement due to expire march 31st 2017 isn't that very different from saying as it says here the guaranteed five shift markup each payroll period for the balance of the that's a to say this your shoes got to be worn through the end of the collective bargaining agreement is different than saying your five shift guarantee is going to last through each payroll period week for the balance of the agreement comma ending march 31 2017 i guess i'm i'm saying the word comma because it strikes me that the comma there is a very meaningful thing it's not saying the end of this agreement ending march 31 it's saying the end of the agreement and then it's saying comma march 31 2017 in other words this is the date we're picking to end this 10.2 obligation i mean it's that it's the difference between saying uh let's eat kids and let's eat comma kids the the first is an invitation to cannibalism the second is an invitation for children to come to dinner and they're pretty different things yeah i just ask the kids yeah so i'll agree with that isn't the comma here of real significant import so i i don't think it is uh really well there's there's a long-standing i to the extent that grammar and syntax and punctuation matter anymore there's a there's an old principle relative to participial phrases and what that rule says is that a participial phrase comes at at the end of a sentence and a comma usually precedes the phrase if it modifies an earlier word in the sentence but not if the phrase directly follows the word it modifies follow i do then i have some meaning here doesn't it support why a comma would have been inserted at 10.02 at this very spot and i guess i would just say that well i agree with as a matter of grammar and syntax the the parties the contract shows that the parties didn't draft with that level of care that we would perhaps might expect because there are instances there are other examples of including the end date along with the agreement there are other examples where they gave us one mr heller and it's one where it's very explicit that they're talking about the whole collective bargaining agreement they speak of it in that terms but why don't we just say since time is limited assume for the sake of argument that we thought the comma really meant something that they were careful drafts people sophisticated parties who knew what they were and if we assume that and we thought that nlrb was wrong in its contract interpretation is the post cassette correct in asserting that that means this did not survive and become part of the status quo if they're con if their contract interpretation is right are they correct that it's it did not become part the status quo i would say that if they're if you agree with them that ending march 31st 2017 if that phrase refers to the five shift guarantee then that means the parties waived their right to maintenance of the status quo i don't agree that it does not become part of the status quo it clearly was part of the status quo because the five shift guarantee was an existing term and condition at the time the contract expires that's different than finley hospital it's like you're looking at the time the contract expires and we've got a provision that we for purposes of argument are assuming means that it terminated this obligation terminated at that time then while other parts of the contract might be continuing for statutory purposes isn't the that particular obligation did not continue i think but i think the reason it did not continue is because it's but the statutory obligation to continue it has been waived well that's it is a waiver analysis that then we're just talking about finley hospital right and whether whether in in analyzing what is the status quo you do that as a matter of looking at the contract and in making that determination it's it's a single step instead of the multiple steps that would go along with just taking anything and everything that's in there regardless of the language calling that the status quo and then you know sort of looking retrospectively to say uh but waiver the family hospital was different because there was a different type of employment term at issue there it wasn't it was the five shift guarantee is a static term it was in place for the entirety of the contract it was in place at the time these employees were getting five shifts per week up until the point in until the contract expired but in finley hospital it was it it was the question was whether the eighth circuit cell the question is whether an annual raise the practice of giving annual raises was the status quo do you look at i understand and so i think there's a distinction between there it's a one-time event and and there's certainly some reference to that as a basis for their decision but it doesn't seem limited to that and here even if this is done on a weekly basis if we have language that's not so different than cawthorn trucking where we're it we've got a language that the obligation terminates or here ends uh then why shouldn't we look at this as a single step and say it's we don't need to to take this as status quo because the language of the of the contract itself makes clear at the outset that this particular obligation did not become part of the status quo even if other terms in the contract did because i think because it goes back to the principles at stake in linton and underlying the unilateral changes and so you have to work hard the lateral that's the why i'm not sure how we're why we're talking past each other mr heller if you acknowledge for the sake of discussion that that the uh interpreted the correct interpretation of 10.2 is that this that the parties mutually agreed that this thing ended on that date and it was not a surviving thing it was over done finito taken out of the rest of it then i i don't understand what linton has to do with it in the world it's just a statement that it's not it seems to me that that's why i asked the question the way i did it seems to me by definition it's not part of the status quo because they agreed it wouldn't be but you seem to be arguing it would be part of the status quo even if they agreed it's not part of the status quo i mean if they'd use the language uh at the end of this agreement till the end of this agreement comma march 31 2017 and this will not be part of the status quo you couldn't be making the arguments you're making could you i think we're getting to the same place i just think it is a waiver analysis it's not the same place because it's pretty big difference as an analytical matter it appears to me to be that i agree you get to the same place because then it you know it whether it's waiver or whether it's contract analysis but we gotta write something here we have to write to this and there's a difference in the burden of proof and then the standard right clear for a waiver we're talking this high in applying ordinary contract principles that's not the way we'd articulate yeah so it matters it does matter and i agree and if this court wants to write an opinion that says by including the language that it did in 10.2 the parties clearly and unmistakably waived their right to maintenance of that term i won't be happy about it but that's how yeah the court would that's how the court would go in compliance with the labor law principle understood now imagine we're not writing it the way you're suggesting but we're writing it this way this was not part of the status quo because of the way 10.2 was drafted they gave it up there what would be legally erroneous about that because it's applying the wrong standard if you're not applying a waiver standard it is the wrong how why why so what you're really saying is there's no way they can ever contract out of the status quo you the nlrb's position is you can never contract out of the status quo it always has to be clear unmistakable waiver language how do you reconcile that with with with tackett and reese because tackett and reese weren't nlra cases those were erisa cases they were breach of contract cases so they dealt with contractual obligations not statutory obligations these are these are contractual obligations they're both these are erisa's that got a contractual got a statutory overlay too you think the nlra is so different so special and the nlrb is so peculiar that when the supreme court talking about labor kinds of issues even in an erisa contract context it it's different and no matter you can never contract out status quo maybe i should just put that way real simply is the nlrb's position parties can never contract out of status quo period so i guess i guess they don't quite understand the difference well that we're talking about every time every time i try to get you to this point you say no no it would have to be waiver because of linton so it sounds like and i just want you to like say it and own it if you're owning it it sounds like what you're saying is parties can never contract out of the status quo obligation no matter what they say no matter how clear they are because there is the statutory overlay of the nlra you always have to if you're going to try to do that you have to have a waiver that would meet statutory language waiver uh standards is that the nlrb's position yes that's good we got it we got it we got it thanks we'll go ahead and we'll hear from go ahead i i want to pick up where um where your your colleague uh left off and that is uh with what the board decided here and whether it's uh in our purview to decide the second question on the intersection of these lines of cases should we read this opinion and say uh the the board simply didn't address it and so we can't either we have to send it back or do we read this opinion to say the board recognized that there is the other line of cases there there is first national maintenance there is uh effects-based bargaining that would is a matter of overall uh an overall bargaining requirement in other words it made implicitly it it made the decision that uh effects-based bargaining is giving way in this circumstance to the requirement of overall bargaining okay so i acknowledge this is a tricky area and i see my time is up so i'll try to go quickly but i want to make sure i cover everything in your question so the board's finding was that this is not an effects bargaining case so if the question if you disagree with that and i can explain why if you want to but if you disagree with the board if you think that the elimination of the five shifts guarantee was a matter of effects bargaining and again we disagree with that but if you think it was and the question is does the effect what is the interplay between that that affects bargaining obligation and the overall impasse requirement then yes you would have to remand because that is an open question that the board did not address the alj addressed it but the board specifically said we're not passing on that issue because we don't find this to be an effects bargaining violation but isn't the conclusion that it's not an effects-based bargaining violation isn't that their decision that in in the context of a case where the entrepreneurial decision is made at this moment in time while negotiations are going on that a case is not per se it is not a case that raises effects-based bargaining it's not a national maintenance case i think it depends on what issue is being bargained about see the five shift guarantee and the board says this at 9 18 in this decision pre-existed the first national maintenance decision that was a topic that the parties had to negotiate over regardless of whether the post gazette made this decision to eliminate print days to move to a digital transition so that's why it was part of regular successor bargaining i do want to say that the the the um obligation to judge to negotiate to a new cba or an overall impasse that was triggered by because the contract had expired not because of the first national maintenance decision so there was already this obligation to bargain to agreement or impasse on the existing terms and conditions of employment which included the five shift guarantee so the for that that's the reason why this is that bargaining over five shift guarantee was not effects bargaining because it already it didn't stem from the decision to pre-existed but so your argument is that the board's decision was based on 10.2 being status quo not necessarily on the termination of these people so the board's decision was that the obligation to me sorry you've heard judge krauss very closely questioned mr jentos about what the or whether it was the fact that the five shift guarantee existed and they and therefore they couldn't terminate right if you understand the distinction that i i i understood her to be dry and i think she was pressing on mr jentos she could speak to herself for herself on that but what i just heard you say seemed to indicate that the board the board's view as you're advocating it right now is they were terminated because they it was unilateral action because the five shift guarantee survived yes it's five yes and the board found both the elimination of the five shift guarantee and the layoffs to be unlawful unlawful unilateral action because they were done by the post gazette without reaching agreement or impasse with the union that's what unilateral action means overall impasse right because they were in successor bargaining world because the contract had expired i want to ask you about a case um and and um you know in fairness this wasn't cited by the parties and uh um uh had it come up earlier well we would have given you a heads up about it but perhaps you're familiar with it anyway that is show industries inc um it's a board decision where uh the the employer was challenging a union certification uh and the board had permitted um the employer to engage in piecemeal bargaining on the effects of an entrepreneurial decision because uh it reasoned that would allow the parties to bargain about effects when it's most meaningful to do so that that's the closest authority in trying to find any authority dealing with a circumstance where overall bargaining would be in plague simultaneously with effects-based bargaining and it looks like they're the board's reasoning and this was a 1998 case um and a plurality decision but the reasoning seems to be that effects bargaining um should go forward where it's uh it that's that that's the circumstance when it would be meaningful to the parties why wouldn't that be the case here as well where you'd be in the context of of overall bargaining but where there's this entrepreneurial decision that's going to lead to these effects the the meaningful uh uh bargaining um takes place at the time that the entrepreneurial decision is going into effect not waiting until there's way down the road uh an overall impasse right so i i mean i'm not familiar with the case it sounds from your description of it like if there was still a challenge to the certification it's possible that there there wasn't bargaining going on at the time it sounds like the employer had probably refused to bargain that's typically how those cases come up um and so then it wouldn't be subject to the overall bargaining the overall impasse requirement which is which comes into when there's bargaining going on um so so that's one point and i guess the other is there is a general i won't say presumption that carries other weight but a general uh principle against piecemeal bargaining because that is a kind of inherently unstable approach to bargaining because bargaining is it deals with back and forth i get give up something on this in exchange for this but when you're when you're breaking it out to piecemeal you don't have that kind of back and forth and so the the board's policy is in favor of overall reaching overall agreement or impasse rather than piecemeal bargaining um and so that's that's that's but again the if the question is if we're in effects bargaining world which the board says we're not here if we're in effects bargaining world and how that interplays with first national maintenance that's the open question so that perhaps the board will look at that case if you remand it on those grounds but that is is it is a case that the board did not address in its decision there's an issue that the board did not address in its decision because it didn't find we were in effects bargaining world okay yeah good okay thank you very much mr heller mr sharma for the union thank you your honor uh may it please the court uh my name is muniz sharma and you're representing the intervener union um i quickly just want to use my time to make some a few points um on the the the point that uh judge kraus uh was asking um my colleague about uh that that even if you were to read the language uh f10 to ending the five shift guarantee that doesn't get the company to the point of being able to unilaterally lay off uh employees what about it what what if what if we were in uh first maintenance uh land and we were talking about effects bargaining sure so the way it works in effects bargaining uh is that the company has to refrain from making the unilateral change the layoff until it's concluded effects bargaining and in this instance their assertion is they they did that well not really they don't they don't ever argue that in their brief wasn't that stipulated by the parties that you engaged not uh to it also engaged to impasse or agreement that's the and before you can make a unilateral agreement a unilateral decide that there's impasse is there is there some you got to go to somebody else and and then say it's impasse or do they they made what they characterize as their final and best offer and it was rejected is that not impasse no your honor impasse is a term of art that the national labor relations board uses there's about a i believe it's a nine factor test that the board uses to determine whether or not impasse is there um and those simple there's my last final there's a very famous quote by judge posner of the seventh circuit saying final last last final uh offers are often followed by last best final offers um that that terminology itself does not necessarily mean that you're at impasse well here where we have a very narrow issue and we've got a sequence that's in the stipulation of facts here of lengthy negotiations multiple meetings back and forth counter offers uh and um and it ends with the parties walking away and not coming back together um how would that test apply how could it be that there is they did not reach an impasse in their effects bargaining yeah so the effects bargain again whether you're at impasse uh is the it's the idea that both parties have to be at the end of the rope and have no room to move the union certainly had never taken the position had no room to move um and and and there's been no determination of whether or not by the board at least by whether or not to get to a determination of that if they've made an entrepreneurial decision which is we're going to digital we're losing money we cannot afford to keep doing this and they say we're doing it uh and they say look they told you a month before uh they engage judge kraus is correct that's the way i read the record too there's back and forth there's multiple meetings there's uh here's what happened then there's the typical lawyer follow-up here's what happened at the meeting the other lawyer or union rep says how does it what happened at the meeting this other happened at the meeting it goes back and forth back and forth uh there's offer counter offer rejection offer counter offer finally this is our last final best offer no we walk away is the is the union's position that before they can do anything somehow there's a there's a legal process that has to happen and some third party has to come in and say now it's impasse or there's not impasse well no your honor the employer can take a unilateral action at its at its peril that can then later be determined to have been an impasse or or not an impasse either way your honor that's a factual determination needs to be made by the board first rather than by this court um and that if the board hasn't made that determination here so if you're looking for that on that basis alone you're saying this has to go back i'm not saying this has to go back your honor because i'm not saying that uh that we're at that issue that's all the other things that we've talked about went against you right if everything else that we've been talked about went against you what what i hear you saying is this court couldn't say pg wins done it would have to say pg has to go back to the board for a factual determination of whether it bargained to impasse on effects bargaining if you if this panel got through all the layers it needs to to get to the point where uh the question is whether or not they write impasse in effects bargaining prior to the layoff then yes you would have to remand for that i think i understand do you have any questions no i don't thanks all right thank you mr sharma mr head toast i'm going to be very brief your honor i just have a couple issues one i want to address the union's argument right there that is a complete red herring there is no allegation anywhere that the the posties that failed to engage in effects bargaining as required well this is what i heard him say i didn't hear him say that that they didn't engage i heard him say there's a factual determination still open and which has to be made about whether you got the impasse so you know he didn't give up anything i didn't hear it i didn't understand him to be given anything away i understood him to be saying in the limited time he had no matter what else happens here you can't just rule for pg because whether they bargain to impasse on effect is it is a fact question that has to be determined by at the agency level first if is he right about that he's wrong your honor because the problem is the general council never alleged that was a violation they never alleged that the pgs effects bargaining that it engaged in they never alleged that that was a violation of the act that's simply just not before the court my second issue i wanted to bring up you heard um nlrb council talk about this idea of of piecemeal bargaining and how first national maintenance interferes with that it this is kind of what i would call a fairness argument they're they're making there frankly i don't quite get it because first national maintenance lays down what the bargaining requirement is and it's it's really that simple that it doesn't matter if it results in piecemeal bargaining that's what the supreme court has ordered in this type of situation but it hasn't addressed this type of situation where there's where you're between collective bargaining agreements where there's ongoing negotiations right that that's that's that's the issue before us nobody's addressed that it's a whole filler oh your honor if you think about it this way so first national maintenance is designed to address a very narrow situation it deals with non-bargain issues that do not require a bargaining requirement now you got cats that deals with the situation where you're talking about a bargaining event whereas first national maintenance deals just with this subset and so happening simultaneously and there's not authority for that i mean the closest seems to be that um show industries that i mentioned but uh other than that neither party's pointed us to any authority so this is an open question i think it's an open question but the board is relying on bottom line that's their analysis their analysis and their law cannot conflict with the supreme court precedent which first national maintenance is so i think what the what the court says is look in this narrow circumstance where there's an entrepreneurial change this is what the bargaining is going to look like can i um ask you about uh the the question about um whether there was impasse uh i'm looking at footnote 18 of the board's decision uh and the board says because we do not find the respondent committed and affects bargaining violation we need not address the respondent's contention that the union engaged in dilatory tactics regarding bargaining over the effects of respondents decision to reduce the number of print days by two um so is that should we take that as a finding that there was not a violation or the absence of any finding um as to whether they reached impasse or not it was never even alleged by the general counsel that there was any type of unlawful effects bargaining that in that occurred here so i do think your honor you could take that statement by the nlrb they've resolved that issue they've made the finding that the post gazette did nothing wrong with its effects bargaining their entire case is based around this premise of bottom line and the idea that we would have to reach some type of overall impasse before we could do anything all right thank you thank you counsel for the analyzer in the union as well we've got the matter under advisement